UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NUMBER: 00-6015-CR-ZLOCH |
| Plaintiff, | ) |
| vs. | ) |
| DONALD T. ROBERSON, | ) |
| Defendant. | ) |

## OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT WITH INCORPORATED MEMORANDUM OF LAW

The Defendant, **DONALD T. ROBERSON**, by and through his undersigned counsel, hereby respectfully registers his objections to the Pre-Sentence Investigation Report (hereafter "PSI"), pursuant to Rule 88.8 General Rules of U.S.D.C., Southern District of Florida, Administrative Order 90-26, U.S.S.G § 6A1.2 (November 1991), Rule 32 of the Federal Rules of Criminal Procedure, and the Fifth Amendment to the United States Constitution. In support thereof he states the following:

### INTRODUCTION

Undersigned counsel and **Roberson** had an adequate opportunity to confer and thoroughly review the PSI in accordance with ***United States vs. Aleman***, 832 F. 2d. 142,144, note 6 (11th Cir. 1987).

Pursuant to Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure, the Court is required, as to each factual matter controverted by the defendant, either to make a finding as to such allegations or determination

67

that no such finding is necessary because the controverted matter will not be

taken into account at sentencing. *id.*

Additionally, Rule 32 guarantees to the defendant the right " . . . to

present any information in mitigation of the sentence."[1] Another provision of

Rule 32 requires that " ... the defendant and the defendant's counsel shall

have an "opportunity to comment on the report . . . "[2]

## THE GUIDELINE CALCULATION IS INCORRECT

Roberson asserts that the Guidelines have been incorrectly applied

by the United States Probation Officer (hereinafter "USPO") in reaching a

Base Offense Level of 37 in the combined PSI.

## ISSUE 1

### MR. ROBERSON DID NOT POSSESS OR USE A FIREARM TO FURTHER CONSPIRACY AND THERE IS NO CREDIBLE EVIDENCE THAT HE HAD KNOWLEDGE OF OR DIRECTED ANYONE TO POSSESS OR USE A FIREARM.

The Probation Department based its determination that Roberson is

culpable for the § 2D1.1 enhancement since firearms were possessed by

members of the conspiracy for the protection of drugs and drug proceeds, a

2 level increase is required.

---

[1] Rule 32(a)(1)(C), Fed. R. Crim. P.

[2] Rule 32(c)(3)(A), Fed. R. Crim. P.

-2-

However, the record is bereft of evidence that Roberson either possessed or reasonably foresaw the possession of a firearm or other dangerous weapon during the commission of the offense.

In ***United States v Alred***, 144 F.3d 1405, 1419-20 (11th Cir. 1998), the Eleventh Circuit held "The Sentencing Guidelines require that a two-level enhancement be applied to the base offense level for a defendant convicted of a drug crime '[i]f a dangerous weapon (including a firearm) was possessed.' U.S.S.G. § 2D1.1(b)(1). The weapon possession enhancement reflects the increased likelihood of violence associated with the possession of firearms by drug traffickers. See id. *comment.*(n.3). A sentence enhancement based on a coconspirator's firearm possession is permitted if "(1) the firearm possessor was charged as a coconspirator; (2) the coconspirator *possessed the firearm in furtherance of the conspiracy*; and (3) the coconspirator who is to receive the sentence enhancement was a member of the conspiracy at the time that his conconspirator possessed the firearm." *United States v. Gates*, 967 F.2d 497, 500 (11th Cir.1992) *(per curiam)*. The government has the burden of establishing the appropriateness of the firearm possession enhancement by a preponderance of the evidence. See id. at 500-01. Actual knowledge of the coconspirator's firearm possession by the convicted defendant is not required for the enhancement to apply, *but possession must be reasonably foreseeable.* See *United States v. Martinez,* 924 F.2d 209, 210-11 & n. 1 (11th Cir.1991) (*per curiam*). Additionally, we have held that

-3-

the enhancement is to be applied whenever a firearm is <u>possessed during</u> <u>conduct relevant to the offense of conviction</u>.' *United States v. Smith*, 127 F.3d 1388, 1390 (11th Cir.1997) (*per curiam*)."

Here, the PSI reports that:

On November 16, 1998, a weapon was found at a residence located at 1721 N.W. 6th Avenue, Fort Lauderdale, Florida. The search revealed that the residence was that of JOSEPH SAMUELS. During the search, agents found a loaded stolen .38 Smith & Wesson airweight revolver. Samuels was arrested and charged with narcotics and firearm offenses, Id at page 6, para 10.

On December 9, 1998, a search warrant was obtained and executed on 1428 N.W. 5th Avenue. Fort Lauderdale. Florida. At this residence a Colt .380 semi-automatic handgun was found. Frederick Hinds, Billy Parish and Michael Obeck were arrested at the location for narcotics crimes, Id. At para 11.

On January 25, 1999, an unknown person entered the home of ERICK JACKSON. The assailant branished a chrome-plated firearm demanding money. When Jackson told the assailant that he did not know anything about the money he was shot in the leg, at page 6-7.

On March 5, 1999, agents of the Federal Bureau of Investigation conducted controlled buys of cocaine from Roberson. The controlled buy

-4-

was conducted at 1604 N.W. 11th Court, Lauderhill, Florida. No gun was reported seen during this successful buy of $700 of cocaine, at paragraph 14.

On March 15, 1999 VINCENT KIP DAVIS was arrested for possession of cocaine. Davis admitted he had been selling cocaine for Don Q for the past five months. While 50 baggies containing cocaine and $12,120 US Currency was found on Davis, no gun was found on Davis or in his vehicle when he was arrested. Id at page 7-8, para. 15.

On August 17, 1999, a police detective and a FBI agent directed a CI to make a controlled purchase from Robinson. The CI arranged to pay Roberson a past due debt of $300 and obtain $600 of cocaine. The CI arrived at Roberson's residence located at 1604 N.W. 11th Court, paid him the money and upon returning to Roberson's residence obtained a plastic baggie containing crack cocaine. No drugs were seen during this controlled buy, Page 8, para. 16.

On August 25, 1999, the police detective, EUGENE LEWIS and the FBI agent again arranged the CI to make a controlled buy from Roberson. The CI went to the residence at 1604 N. W. 11th Court, paid for the $600 of fronted drugs and was fronted $1,200 of cocaine, Id. at para. 17.

During December 26, 1999, members of the North Broward Drug Enforcement Unit organized an operation to purchase narcotics from Roberson. On December 28, 1999, the CI was fitted with a listening devise and given $1,800 of investigative funds. Roberson went to get the cocaine,

-5-

returned to the residence and provided the drugs to the CI, Id at page 9, para 20. No guns or discussion of drugs were seen during the transaction.

On January 3, 2000, agents of the FLPD, FBI and other law enforcement agencies had devised an operation plan to execute search warrants at Roberson's residence. A CI was outfitted with a listening devise and provided $2,500 of investigative funds in order to arrange a controlled buy at Roberson's residence. Roberson left his residence to pick-up the drugs. Upon his picking up the drugs and leaving that location, Roberson was stopped in a traffic stop. The search revealed that Roberson had four ounces of cocaine on his person and ten kilograms of cocaine was discovered in a cardboard box on the interior bench seat on the passenger side of Roberson's vehicle. Roberson was placed in custody. There was no guns found in Roberson's vehicle in the subsequent search, Id. At page 9-10, para. 20-21.

After Roberson's arrest, a search was conducted of his residence located at 1604 N.W. 11th Court. The officers discovered 23 grams of powder cocaine at the residence but no guns or weapons, Id. at page 10, para. 23.

The Officers also searched the address at 5802 N.W. 12th Street. The officers found one kilogram of cocaine, a box of 9 mm ammunition, a box of .357 ammunition, a black Kolpin pistol case, a paper bag containing 30 caliber ammunition and two firearm magazines during the search.

-6-

However, there was no guns found and that residence did not belong to Roberson, *Id* at para. 25.

There is no evidence that Roberson possessed or reasonably foresaw the possession, therefore he is not culpable for an enhancement for possession of a firearm during the commission of the offense. § 2D1.1(b)(1).

In ***United States v. Gallo***, 195 F.3d 1278, 1284 (11th Cir. 1999), held that " we hold that for a § 2D1.1(b)(1) firearms enhancement for co-conspirator possession to be applied to a convicted defendant, the government must prove by a preponderance of the evidence:  (1) the possessor of the firearm was a co-conspirator, (2) *the possession was in furtherance of the conspiracy*, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the *co-conspirator possession was reasonably foreseeable by the defendant." (Emphasis Ours)*.

Here, the Government has not provide a scintilla of evidence to support that Roberson reasonably foresaw the use of or possession of firearms by his alleged co-conspirators. In fact, Roberson was directly responsible for picking up and delivering the cocaine during the controlled buys. At no time was there any suspicion that Roberson possessed a firearm. Additionally, there is no evidence that Roberson had guns present during any of the drug sales at his residence. Roberson is not culpable for an enhancement for the possession of a firearm, pursuant to § 2D1.1.

## ISSUE II

### MANAGER OR SUPERVISOR ROLE. THE PSR SUGGESTS THAT ROBERSON WAS A MANAGER OR SUPERVISOR IN A CONSPIRACY INVOLVING FIVE OR MORE PARTICIPANTS. IT RECOMMENDS A 4 POINT ENHANCEMENT.

The PSR recommends a 4 point enhancement based on its claim that Roberson was a manager or supervisor in the charged conspiracy. However, there is no evidence to support that Roberson was a manager or supervisor in the conspiracy charged in the indictment.

There is no credible evidence that Roberson recruited salesperson nor that Roberson took financial risks on behalf of the conspiracy. See, *United States v. Loveless,* 139 F.3d 587, 594 (8th Cir. 1998) ((The evidence at trial indicated that Loveless recruited Reber to distribute methamphetamine and that he attempted to recruit Shari Trompke to distribute larger quantities of methamphetamine. See *United States v. Tran*, 122 F.3d 670, 673 (8th Cir.1997) (finding that defendant's recruitment of others to participate in the conspiracy demonstrated that he was a manager or supervisor). Loveless also fronted drugs to Reber, thus assuming a financial risk for some of the drug sales. See *Pena,* 67 F.3d at 156 (finding that defendant was a manager or supervisor of a drug conspiracy, in part, because he "retain[ed] the financial risk of distribution by fronting or consigning the drugs"). More importantly, however, the evidence at trial demonstrated that Loveless exercised a great

-8-

deal of control over Reber and the sales Loveless made to him; Loveless decided where the sales would take place, the price for the methamphetamine, and the method of payment. A defendant's "determination of the price to be charged for narcotics is further evidence of his managerial or supervisory role." ***United States v. Pierce***, 907 F.2d 56, 57 (8th Cir.1990)).

The Eleventh Circuit has rejected similar unsupported claims by the Government in urging a manager/supervisor enhancement. In, **United States v. Glinton**, 154 F.3d 1245, 1260 (11th Cir. 1998), the Court vacated the sentence where "The government also argues the enhancement was appropriate because evidence showed that Mosley and Hines "worked for" Heath. However, the government has the burden of proving by a preponderance of evidence the existence of the aggravating role. See *Yates*, 990 F.2d at 1182; *United States v. De La Rosa,* 922 F.2d 675, 679 (11th Cir.1991). The only evidence offered by the government that Mosley and Hines "worked for" Heath was the *double hearsay statement* by Agent Brillinger that Martin had told him Heath called Mosley and Hines part of his "group." See R.60 at 37-38. *While this statement may imply Heath resold his drugs to Mosley and Hines, it does not support a finding that Heath in any way supervised or managed Mosley's and Hines' activities.* See, *United States v. Brown*, 944 F.2d 1377, 1381 (7th Cir.1991) (*status as a distributor, standing alone, does not warrant an enhancement* under § 3B1.1). A managerial enhancement cannot be imposed unless there is a preponderance of evidence that the

defendant supervised or controlled others, or exercised some management responsibility over the activities of the criminal organization. See _Lozano-Hernandez,_ 89 F.3d at 790." (Emphasis Ours) See, also, _United States v. Alred,_ 144 F.3d 1405, 1420-22 (11th Cir. 1999)

The PSI grants a four (4) level upward adjustment for role in the offense. We object and believe that the facts are insufficient to support a four (4) level upward adjustment for role in the offense as an organizer and/or leader.

The Record does not support that Roberson was involved in an *organization* of five or more co-conspirators. At best, the Probation Department identifies JOSEPH SAMUELS as a member of Roberson's *organization.* On the other hand, the PSI states that FRANTZ LAVANCHE was an intermediary between Roberson and the supplier. An intermediary cannot be construed as a person that Roberson manages or controls. In fact, the reverse is the case since Lavanche and the supplier control and manage Roberson's ability to obtain drugs.

Therefore, outside Samuels, the PSI merely cites a number of individuals who were present during Roberson's drug trafficking transaction with the CI, e.g. Willie Hamilton and Yanette Williams were at the residence located at 1604 N.W. 11th Street when the officers conducted the search warrant. Additionally, the PSI states that Oscar Alex Williams was present during the January 3, 2000 controlled buy. However, the law is well-settled that mere presence at a drug scene is not sufficient to claim a party is a

-10-

member of the drug conspiracy, See, *United States v. Lopez-Ramirez*, 68 F.3d 438, 441 (11th Cir. 1995)(This court has repeatedly held, however, that mere association with a conspirator and presence in a vehicle which engages in counter-surveillance maneuvers is not sufficient to establish participation in a conspiracy to distribute cocaine or possession with intent to distribute cocaine. See *United States v. Hernandez*, 896 F.2d 513, 519 (11th Cir.), *cert. denied,* 498 U.S. 858, 111 S.Ct. 159, 112 L.Ed.2d 125 (1990) (Holding defendant's association with co-defendant insufficient to prove conspiracy or possession although defendant was in vehicle from which drugs were retrieved and was present when drugs were given to undercover agent))

The extensiveness or size of the conspiracy is therefore not a controlling factor in determining an upward leadership adjustment. Without proof of the defendant's leadership role, evidence of operation's extensiveness is insufficient as a matter of law to warrant a sentence adjustment based on defendants role as organizer or leader of criminal activity. *United States v. Alred*, 144 F.3rd 1405 (11th Cir. 1998)

Second, while the Government may argue that Roberson played an important role in the case, his status as an integral figure in the offense conduct, does not in itself establish the necessary elements to warrant the application of a four (4) level enhancement. *See, United States vs. Torres,* 53 F.3rd 1129 (10th Cir. 1995).

To receive an increase, Roberson must have played a significant role in the criminal activity. Courts have historically looked at a number of factors to determine whether a defendant can and/or should be aggravated for his role. These factors include: 1) the exercise of decision making authority; 2) the nature of the participation in the offense; 3) the recruitment of accomplices; 4) the claimed right to a larger share in the proceeds of the crime; 5) the degree of participation in planning or organizing the crime; 6) the nature and scope of the illegal activity: and, 7) the degree of control and authority exercised over other participants; U.S.S.G. 3B1.1 commentary n.4 See, *United States v. Mustread*, 42 F.3rd 1099, 1104 (7th Cir. 1994).

In this case, the Roberson was not the manager or organizer of this organization.

## ISSUE III

## THE PROBATION DEPARTMENT SUGGESTS THAT ROBERSON IS A CAREER CRIMINAL

The PSI states that Roberson is a career criminal and therefore should be sentenced under Category IV and at a base offense level of 40, less the 3 points for acceptance of responsibility.

The PSI is technically correct that Roberson's prior convictions result in a finding of career. Here, the record reveals that Roberson's first predicate drug conviction was in 1990. Then in 1998, Roberson sold $10.00 worth of drugs in a controlled buy and entered a plea of guilty.

-12-

During the plea negotiations, the Government agreed not to seek a career criminal enhancement due to Roberson's willingness to accept his guilt, plea guilty and disclose his participation in the drug trafficking business. While that understanding with the Government is not binding on the Court, Roberson respectfully requests the Court to consider a downward departure and not enhance his offense category due to the overstatement of the criminal history points.

In ***United States v. Webb***, 139 F.3d 1390, 1396 (11th Cir. 1998), the Eleventh Circuit held that "We further conclude that the guideline provision pursuant to which Webb seeks a departure in his sentence, U.S.S.G. § 4A1.3, does authorize such a departure under certain circumstances. This provision permits a court to depart either downward or upward from a defendant's prescribed sentence "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes...." U.S.S.G. § 4A1.3. Webb correctly notes that our circuit has never explicitly held that § 4A1.3 confers on the sentencing court the authority to depart downward, given the findings articulated above, in the specific case of a defendant who has been classified as a career offender. Consistent with every other circuit to have addressed this issue, we now hold that § 4A1.3 does authorize the sentencing court to downward depart regardless of a defendant's status as a career offender under § 4B1.1.  See e.g., *United*

-13-

*States v. Shoupe*, 35 F.3d 835, 839 (3rd Cir.1994) ("[W]here a defendant's offense level has been augmented by the career offender provision, a sentencing court may depart downward in both the criminal history and offense level categories under § 4A1.3."); *United States v. Reyes*, 8 F.3d 1379 (9th Cir.1993) ("Since it is well established that a downward departure from career offender status is permissible ... we look only to the circumstances of this case to determine whether the district court's stated basis for departure is appropriate.") (citation omitted); *United States v. Clark*, 8 F.3d 839, 843 (D.C.Cir.1993) ("The circuits that have confronted the issue unanimously agree that the policy statement in § 4A1.3 permits a downward departure ... for those who would otherwise qualify as career offenders.... Thus the district court was well within its legal authority in basing its downward departure on this factor."); *United States v. Rogers*, 972 F.2d 489, 493 (2nd Cir.1992) ("Contrary to the government's argument, there is nothing unique to career offender status which would strip a sentencing court of its sensible flexibility in considering departures.") (internal quotation marks omitted);*United States v. Bowser*, 941 F.2d 1019, 1023 (10th Cir.1991) ("As a threshold issue, we agree ... that the Sentencing Guidelines permit the district court to depart downward from career offender status."); *United States v. Brown*, 903 F.2d 540, 545 (8th Cir.1990) ( "[Although] the government contends the guidelines prohibit departure in all career offender cases ... [t]he overall policy provisions of the guidelines make clear that the Sentencing

-14-

Commission did not intend to so completely restrict sentencing judges in this area.")."

Roberson has demonstrated that he has recognized the societal errors he made by his guilty plea and agreement to fully disclose his participation in the drug business. Also, due his realization of the impact of substance abuse that led to his criminal conduct, Roberson has actively sought alcohol and substance abuse counseling and programs while he has been incarcerated. The Court is requested to consider that rehabilitative conduct in its consideration of the career criminal enhancement or, alternatively, consider a downward departure pursuant to 18 U.S.C. § 5K2 based on his rehabilitative conduct.

Recently, in ***United States v Pickering***, 178 F.3d 1168, 1174 (11th Cir. 1999), the Eleventh Circuit joined its sister circuits and held that "Although a sentencing court already takes into account "post-offense rehabilitative efforts (e.g., counseling or drug treatment)" in deciding whether to reduce a defendant's offense level due to acceptance of responsibility, see U.S.S.G. § 3E1.1, comment. (n.1(g)), we have held that "a truly extraordinary post-arrest, pre-sentence [rehabilitation] may exceed the degree of [rehabilitation] contemplated in section 3E1.1 and therefore justify a downward departure." *United States v. Williams*, 948 F.2d 706, 710-11 (11th Cir.1991)

(discussing post-arrest recovery from drug addiction);  see also **Koon**, 518 U.S. at 96, 116 S.Ct. at 2045 (stating that if a factor is "an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present")."

## Issue IV

## ROBERSON DOES NOT HAVE A PRIOR CARRYING A CONCEALED WEAPON CHARGE

The Department of Corrections has determined that Roberson resolved a Carrying a Concealed Weapon Charge base on Case Number 90-31602MM10A. This case was resolved on February 17, 1993 with a fifty (50) dollar fine. The Department of Corrections pursuant to § 4A1.1(c) added an additional guideline point to Roberson.

Roberson maintains that he did not resolve this case. Roberson was in prison on February 17, 1993 for Case Number 90-0290CF10A. It is the Government's burden of proof to establish this case as Roberson's.

-16-

## **CONCLUSION**

THEREFORE, the Defendant Donald T. Roberson, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, respectfully requests that this Honorable Court grant his objections to the pre-sentence report and request for downward departures, and grant any additional relief it deems appropriate and just.

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed, **VIA US MAIL**, to GEORGANN STANLEY/IM, USPO, United States Probation Department, 299 E. Broward Blvd., Room 409, Fort Lauderdale, Florida 33301-1168 and AUSA ROGER POWELL, US Attorneys Office, 500 East Broward Blvd., Seventh Floor, Fort Lauderdale, Florida 33394, this 6th day of June 2000.

RESPECTFULLY SUBMITTED:

LAW OFFICE RICHARD CASTILLO, P.A.
440 South Andrews Avenue
Fort Lauderdale, Florida 33301
Telephone (954) 522-3500

By:_____
RICHARD CASTILLO, ESQUIRE

-17-