# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

UNITED STATES OF AMERICA,   )      **CASE NO. 00-6015-CR-ZLOCH**
                     )
                     )
      **Plaintiff,**       )
**vs.**                    )
                     )
**DONALD T. ROBERSON,**    )
                     )
      **Defendant.**     )
_____)

## NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PREVIOUSLY FILED *APPRENDI* OBJECTIONS

The Defendant, DONALD T. ROBERSON, by and through his undersigned counsel,

hereby respectfully submits supplemental authority in support of Apprendi objections to the

pre-sentence investigation; pursuant to Rule 88.8 General Rules of United States District

Court, Southern District of Florida, Administrative Order 90-26

United States Supreme Court § 6A1.2 (November 1991), Rule 32 of the Federal Rules of

Criminal Procedure and the Fifth Amendment to the United States Constitution.

## CERTIFICATION

I HEREBY CERTIFY that a true and correct copy of the foregoing was hand
delivered to Georgann Douglas, U.S.P.O. United States Probation Department, 299 East
Broward Boulevard, Room 409, Fort Lauderdale, Fl. 33301 and hand delivered to Assistant
State Attorney Roger Powell, U.S. Attorney's Office, 500 East Broward Boulevard, Seventh
Floor, Fort Lauderdale, Fl. 33301 this 6th day of October, 2000.

> Respectfully Submitted:
> Richard P. Castillo, Esq.
> 440 South Andrews Avenue
> Fort Lauderdale, Fl. 33301
> (954) 522-3500 Office
> (954) 522-7571 Facsimile
> Castillo@lawyer.com E-mail

By:_____
     RICHARD P. CASTILLO, ESQ.

1

cr-06015-WJZ  Document 86  Entered on FLSD Docket 10/11/2000  Pa
NT BY: LYNN G. WAXMAN, P.A.;   561 659-1215;   OCT-2-00 3:01PM;   PAGE 2

[PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 99-15150

D.C. Docket No. 99-14031-CR-KMM

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 29, 2000
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AARON LAMAR ROGERS,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

(September 29, 2000)

Before TJOFLAT, HILL and POLITZ*, Circuit Judges.

---

*Honorable Henry A. Politz, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

TJOFLAT, Circuit Judge:

Aaron Lamar Rogers appeals his sentence of 360 months' imprisonment and 5 years' supervised release for a drug conviction under 21 U.S.C. § 841. Because of the rule announced in Apprendi v. New Jersey, ___ U.S. ___, 120 S. Ct. 2348, ___ L. Ed. 2d ___ (June 26, 2000), that any fact (other than prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be presented to a jury and proven beyond a reasonable doubt, we vacate Rogers's sentence and remand to the district court for resentencing.

I.

Aaron Lamar Rogers was arrested on June 11, 1999, in Stuart, Florida. Police found 1 gram of cocaine base (crack cocaine) in Rogers's pocket and two cocaine cookies, which totaled 40 grams, in the van Rogers had been driving.

Rogers was indicted by a Southern District of Florida grand jury for possession of cocaine base (crack cocaine) with intent to distribute in violation of 21 U.S.C. § 841(a)(1).[1] He was tried before a jury on August 26, 1999, and was found guilty. Prior to trial, on August 11, 1999, the Government filed a Previous Conviction Information, pursuant to 21 U.S.C. § 851, notifying Rogers that the Government intended to rely on three prior felony drug convictions to seek an enhanced penalty.

Following Rogers's conviction, a Pre-Sentence Investigation Report ("PSI") was prepared

---

[1] 21 U.S.C. § 841(a)(1) reads, in pertinent part:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally --

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

2

by a United States Probation Officer. The PSI was made available for disclosure on October 18,

1999. The PSI noted that Rogers was convicted under section 841(a)(1) and that the

Government filed an Information pursuant to section 851. Although the Information never stated

the statutory section the Government would rely upon for sentence enhancement, the PSI claimed

that the Government intended to rely on the Information "to seek the enhanced penalty pursuant

to 21 U.S.C. § 841(b)(1)(A)." The PSI calculated Rogers's base offense level under the United

States Sentencing Guidelines Manual ("U.S.S.G." or "the Guidelines") § 1B1.3 as 30, because

Rogers possessed 41 grams of cocaine base "crack cocaine."[2] See U.S.S.G. § 2D1.1(c)(5)

(establishing base offense level at 30 if the offense involved at least 35 grams but less than 50

grams of cocaine base). Pursuant to U.S.S.G. § 4B1.1, the PSI also determined that Rogers was

a "career offender." The PSI ascertained the statutory maximum penalty under section

841(b)(1)(A) as life imprisonment, which gave Rogers an offense level of 37 based on his career

offender status. There were no adjustments for acceptance of responsibility. The PSI thus

recommended sentencing Rogers at offense level 37 based on his career offender status.

The PSI also calculated the criminal history category for Rogers as category VI, based on

an accumulation of 14 points. (Twelve points were criminal history points and two points were

added because the instant offense was committed less than two years after imprisonment on a

sentence counted in U.S.S.G. § 4A1.1(b). See U.S.S.G. § 4A1.1(e).)

The PSI listed the relevant statutory provision as 21 U.S.C. § 841(b)(1)(A), and claimed

the possible term of imprisonment as ten years to life, consistent with section 841(b)(1)(A). The

---

[2] There were no adjustments to the base offense level of 30 for specific offense
characteristics, victim-related adjustments, adjustments for role in the offense, or adjustments for
obstruction of justice.

3

PSI made no further mention of the section 851 enhancement sought by the Government, which would have enhanced Rogers's sentence under section 841(b)(1)(A) to twenty years to life. Based on an offense level of 37 and a criminal history category of VI, the PSI then turned to the Guideline table and determined the imprisonment range to be 360 months to life imprisonment.[3]

On November 9, 1999, more than two weeks before sentencing, Rogers objected to the PSI in that it determined a quantity of drugs against him in an amount not set forth in the indictment nor determined by a jury; he alleged that this violated the requirements of Jones v. United States, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999).[4] Rogers challenged the use of his prior convictions to enhance his sentence pursuant to section 851. He further objected to the PSI's reliance upon those prior convictions, which Rogers claimed involved ineffective assistance of counsel. Finally, Rogers moved for a downward departure under the Guidelines, asserting that the career offender offense level of 37 over-represented the seriousness of his criminal history.

At sentencing on November 22, 1999, the district court entertained Rogers's Jones

---

[3] The PSI further noted that at least five years' supervised release was required, pursuant to 21 U.S.C. § 841(b)(1)(A), and that a supervised release term of five years was required, pursuant to U.S.S.G. § 5D1.2(a)(1) and (b). The PSI stated that a sentence of probation was expressly precluded under 21 U.S.C. § 841(b)(1)(A) and U.S.S.G. § 5B1.1(b)(2). The PSI noted that the maximum fine was $4,000,000, pursuant to 21 U.S.C. § 841(b)(1)(A), and the fine range was from $20,000 to $4,000,000, pursuant to U.S.S.G. § 5E1.2(c)(1) and § 5E1.2(c)(4)(A). Finally, a special assessment of $100 was mandatory, pursuant to 18 U.S.C. § 3013.

[4] Rogers's objection to the PSI, as well as to his sentencing, came prior to the Supreme Court's recent decisions in Apprendi v. New Jersey, ___ U.S. ___, 120 S. Ct. 2348, ___ L. Ed. 2d ___ (June 26, 2000) and Castillo v. United States, ___ U.S. ___, 120 S. Ct. 2090, ___ L. Ed. 2d ___ (June 5, 2000). Rogers thus did not have the benefit of relying on those cases when he made his initial objections. After briefing this appeal, however, Rogers called our attention to these recent Supreme Court decisions when they became available.

4

10/03/00  14:54 FAX 305 530 7120    Federal Public Defender → FPD-Ft Laud

cr-06015-WJZ    Document 86    Entered on FLSD Docket 10/11/2000    Pa
SENT BY: LYNN G. WAXMAN, P.A.;    561 659 1215;    OCT-2-00  3:02PM;    PAGE 8

objection that the quantity of cocaine should have been determined by the jury beyond a
reasonable doubt. The district court overruled this objection and then determined by a
preponderance of the evidence that Rogers had possessed 41 grams of crack cocaine. The district
court further entertained Rogers's alternate argument for a downward departure, in which Rogers
effectively contended that he should be sentenced under section 841(b)(1)(B) rather than section
841(b)(1)(A), based upon the quantity of cocaine at issue. The district court also rejected this
argument. The district court then adopted the findings of fact and the statutory and Guideline
applications contained in the PSI and sentenced Rogers under section 841(b)(1)(A) at a base level
of 37 and a criminal history category of VI. The district court did not rule on the section 851
enhancement. Rogers was then sentenced to 360 months' imprisonment, 5 years' supervised
release, and a $100 special assessment.[5] After pronouncing the sentence, the district court asked
if there were any objections. Rogers renewed his previous objections. The Government did not
object.

   Rogers now appeals his sentence. The Government has not cross-appealed.


## II.

   This case is before us to review an allegedly illegal sentence. We review a district court's
interpretation of the Sentencing Guidelines de novo. See United States v. Jamieson, 202 F.3d
1293, 1295 (11th Cir. 2000) ("This court reviews the district court's findings of fact for clear
error and its application of the sentencing guidelines to those facts de novo."). We are also called

---

[5] The district court did not impose a fine because it found that Rogers was unable to pay
one.

10/03/00  14:55 FAX 305 536 7120      Federal Public Defender   Frb-F1 Lab

cr-06015-WJZ   Document 86   Entered on FLSD Docket 10/11/2000   Pa
;ENT BY: LYNN G. WAXMAN, P.A.;      561 659 1215;      OCT-2-00  3:02PM;      PAGE 7

upon to determine the applicability of Jones v. United States, 526 U.S. 227, 119 S. Ct. 1215, 143

L. Ed. 2d 311 (1999), and Apprendi v. New Jersey, ___ U.S. ___, 120 S. Ct. 2348, ___ L. Ed. 2d

___ (June 26, 2000), to this case. This is a pure question of law that we review de novo. See

Doe v. Chiles, 136 F.3d 709, 713 (11th Cir. 1998).


III.

A.

Under the interpretation of the law before Apprendi, ___ U.S. at ___, 120 S. Ct. at 2362-

63, Rogers should have been sentenced under section 841(b)(1)(B) rather than under section

841(b)(1)(A) because the quantity of crack cocaine he possessed (41 grams)[6] placed him within

the purview of section 841(b)(1)(B).[7] Because Rogers was sentenced improperly, this alone is

reason for us to vacate and remand the sentence. See, e.g., United States v. Rhodes, 177 F.3d

963, 967-68 (11th Cir. 1999) (vacating the supervised release portion of a sentence when the

district court sentenced the defendant above the maximum allowed by statute).

Were we to follow this route, the district court would have to sentence Rogers within the

_____

[6] The quantity of crack cocaine that Rogers possessed was determined by the district court
at sentencing.

[7] 21 U.S.C. § 841(b)(1)(A)(iii) establishes penalties for "50 grams or more of a mixture or
substance . . . which contains cocaine base." The potential imprisonment under section
841(b)(1)(A) is ten years to life. If the defendant is convicted "after a prior conviction for a
felony drug offense has become final" (i.e., after a section 851 enhancement), then the
imprisonment term is 20 years to life; if there are two prior felony drug convictions, the
imprisonment is a mandatory life sentence.

In contrast, section 841(b)(1)(B)(iii) governs quantities of cocaine base containing "5
grams or more." The term of imprisonment dictated by section 841(b)(1)(B) is five to forty years.
If there is a prior felony drug conviction, however, the sentence increases to ten years to life.

6

five to forty year range required by section 841(b)(1)(B); the ten years to life provision would be inapplicable because the court did not use the section 851 enhancement.[8] Applying the five to forty year range would not alter the base offense level of 30, which under the Guidelines is derived from drug quantity, but the "career offender" provision, under which Rogers was actually sentenced, would have to be re-evaluated because of the forty year maximum sentence. The Guidelines provide that if the maximum sentence is life, then the defendant's offense level under the career offender provision shall be 37. See U.S.S.G. § 4B1.1(A). However, if the offense statutory maximum is twenty-five years or more, as it would be under section 841(b)(1)(B) without a section 851 enhancement, then the career offender offense level is 34. See U.S.S.G. § 4B1.1(B). This would change the possible range of imprisonment from 360 months-life (under category VI, level 37) to 262-327 months (under category VI, level 34).

However, we must decide this case in light of the Supreme Court's recent holding in Apprendi, ___ U.S. at ___, 120 S. Ct. at 2362-63. This means that our analysis must move beyond merely looking to whether Rogers should have been sentenced under section 841(b)(1)(B) rather than section 841(b)(1)(A), and instead focus on whether Rogers was properly sentenced in view of the fact that his sentence was determined, in part, by drug quantity — which was neither charged in the indictment nor proven beyond a reasonable doubt to the jury.

### B.

Precedent in this circuit dictates, even after Jones, 526 U.S. 227, 119 S. Ct. 1215, that drug quantity need not be charged in the indictment or proven to a jury beyond a reasonable

---

[8] See the analysis at infra part III.C.

7

doubt. See United States v. Hester, 199 F.3d 1287, 1292 (11th Cir. 2000), petition for cert. filed, ___ U.S.L.W. ___ (U.S. June 12, 2000) (No. 99-10024). A central question is whether Hester continues to be good law in light of Apprendi.

1.

The government must prove every fact of a crime before a defendant may be convicted of that crime. See In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970) ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); see also Mullaney v. Wilbur, 421 U.S. 684, 703-04, 95 S. Ct. 1881, 1892, 44 L. Ed. 2d 508 (1975) (interpreting the Due Process Clause and Winship as requiring that the prosecution must prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case). However, the Supreme Court, in 1977, rejected the notion that whenever a State links the "severity of punishment" to "the presence or absence of an identified fact" the State must prove that fact beyond a reasonable doubt. Patterson v. New York, 432 U.S. 197, 214, 97 S. Ct. 2319, 2329, 53 L. Ed. 2d 281 (1977).

Extending this reasoning from Patterson, the Court decided in McMillan v. Pennsylvania, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986), that there is a distinction between elements of an offense, which must be proven beyond a reasonable doubt, and "sentencing factors." See Apprendi, ___ U.S. at ___, 120 S. Ct. at 2360 (noting that McMillan was the first case to

8

recognize the distinction between elements of an offense and sentencing factors). McMillan involved a constitutional challenge to Pennsylvania's Mandatory Minimum Sentencing Act, 42 Pa. Cons. Stat. § 9712 (1982). That statute dictated that anyone convicted of certain felonies was subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge found, by a preponderance of the evidence, that the defendant "visibly possessed a firearm" during the commission of the offense. McMillan, 471 U.S. at 81-82. 106 S. Ct. at 2413-14. The Supreme Court found the statute constitutional, holding that the statute "operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of . . . a firearm. . . . The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense." Id. at 88, 106 S. Ct. at 2417. Accordingly, Pennsylvania could permissibly take one factor traditionally considered by sentencing judges -- the instrumentality used to commit the offense -- and state the precise weight that factor was to receive. See id. at 89-90, 106 S. Ct. at 2418. Thus, the Court recognized that legislatures have some discretion in defining the elements of a crime versus enunciating sentencing factors. See id. at 86-87, 109 S. Ct. at 2416; accord Staples v. United States, 511 U.S. 600, 604, 114 S. Ct. 1793, 1796, 128 L. Ed. 2d 608 (1994) ("[T]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." (quoting Liparota v. United States, 471 U.S. 419, 424, 105 S. Ct. 2084, 2087, 85 L. Ed. 2d 434 (1985)).

The next case to address the distinction between sentencing factors and elements of an offense was Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). Almendarez-Torres questioned the constitutionality of a provision of the

9

Immigration and Naturalization Act, 8 U.S.C. § 1326(b)(2) (1994), which authorizes an increased

prison sentence for an alien who has re-entered the United States after deportation if there is

evidence of a prior aggravated felony. In Almendarez-Torres, the Court held that the factor of

recidivism, which underlay section 1326(b)(2), was a traditional sentencing factor and need not be

proven beyond a reasonable doubt. See id. at 243, 118 S. Ct. at 1230-31. This was so even

though the statute at issue effectively increased the total maximum sentence the defendant could

receive. Almendarez-Torres arguably extended McMillan, for McMillan involved a mandatory

minimum because of the sentencing factor and Almendarez-Torres involved an increased sentence

as a result of the previous conviction. See id. at 244-45, 119 S. Ct. at 1231.

The very next Term, the Supreme Court distinguished Almendarez-Torres from other

sentencing factor cases because it involved "the distinctive significance of recidivism."[9] Jones v.

United States, 526 U.S. 227, 249, 119 S. Ct. 1215, 1227, 143 L. Ed. 2d 311 (1999). In Jones,

the Court faced the question whether the federal carjacking statute, 18 U.S.C. § 2119 (1994),

defined three distinct offenses or one crime with three possible penalties, two of which were

dependent on proof of facts that did not need to be present in the indictment or decided by the

jury. See Jones, 526 U.S. at 229, 119 S. Ct. at 1217. The basic statute, 18 U.S.C. § 2119(1),

provides that anyone convicted under the statute must be imprisoned for no more than fifteen

years. However, if "serious bodily injury" resulted from the carjacking, the term of imprisonment

---

[9] The Court stated:

One basis for that possible constitutional distinctiveness [of recidivism] is not hard to see:
unlike virtually any other consideration used to enlarge the possible penalty for an offense,
and certainly unlike the factor before us in this case, a prior conviction must itself have
been established through procedures satisfying the fair notice, reasonable doubt, and jury
trial guarantees.

Jones v. United States, 526 U.S. 227, 249, 119 S. Ct. 1215, 1227, 143 L. Ed. 2d 311 (1999).

10

10/03/00 14:57 FAX 305 530 7120 Federal Public Defender → FLD-11 LAUD

cr-06015-WJZ Document 86 Entered on FLSD Docket 10/11/2000 Pa
SENT BY: LYNN G. WAXMAN, P.A.; 561 659 1215; OCT-2-00 3:04PM; PAGE 12

is to be not more than twenty-five years, 18 U.S.C. § 2119(2), and if death resulted from the carjacking, the maximum term of imprisonment is life, 18 U.S.C. § 2119(3). Lower courts had held that the additional facts that triggered section 2119(2) or section 2119(3) were sentencing factors which need not be charged in the indictment or proven to the jury beyond a reasonable doubt. See, e.g., United States v. Williams, 51 F.3d 1004, 1009-1010 (11th Cir.), cert. denied, 516 U.S. 900, 116 S. Ct. 258, 133 L. Ed. 2d 182 (1995); United States v. Oliver, 60 F.3d 547, 551-54 (9th Cir. 1994), aff'd on appeal after remand, 116 F.3d 1487 (9th Cir. 1997), rev'd sub nom. Jones v. United States, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999). The Supreme Court reversed. Jones, 526 U.S. at 232, 119 S. Ct. at 1219.

Because the Court found alternate readings of the statute plausible, it opted for a reading that provided for three distinct offenses, see id. at 251-52, 119 S. Ct. at 1228, noting that the alternate reading -- one crime with three distinct penalties -- would render the statute subject to constitutional doubt. See id. at 239-40, 119 S. Ct. at 1222. The constitutional problems implicit in reading the statute to provide for sentencing factors rather than elements of an offense were that such a reading would potentially conflict with "a series of cases over the past quarter century, dealing with due process and the guarantee of trial by jury." Id. at 240, 119 S. Ct. at 1222. By avoiding the constitutional issue, the Court did not rule on the constitutionality of making factors other than recidivism "sentencing factors." However, the Court suggested, although it did not establish, the principle that:

> under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

Id. at 243 n.6, 119 S. Ct. at 1224 n.6.

11

After <u>Almendarez-Torres</u> and <u>Jones</u>, it was unclear what factors other than recidivism could permissibly be construed as "sentencing factors" and what must be proved as elements of an offense. Two cases decided last Term clarify the subject. In <u>Castillo v. United States</u>, ___ U.S. ___, 120 S. Ct. 2090, ___ L. Ed. 2d ___ (June 5, 2000), the Court visited the question whether 18 U.S.C. § 924(c)(1)[10] identifies one or two crimes when it prohibits the use or carrying of a "firearm" in the commission of a "crime of violence or drug trafficking crime" but imposes a significantly higher penalty if a "machinegun" is used. The Court held that the "machinegun" language operates as a separate substantive crime and does not merely "authorize an enhanced penalty"; this meant that the defendant must be charged and found guilty beyond a reasonable doubt by a jury on the issue of whether the weapon was a "machinegun." <u>Castillo</u>, ___ U.S. at ___, ___, 120 S. Ct. at 2092, 2096.

In deciding <u>Castillo</u>, the Court focused on congressional intent rather than "the doctrine of constitutional doubt." <u>Id.</u> at ___, 120 S. Ct. at 2092 ("The question before us is whether Congress intended the statutory references to particular firearm types in § 924(c)(1) to define a separate crime or simply to authorize an enhanced penalty."). Specifically, the Court looked at the statute's "language, structure, context, history" and other factors in determining its objectives.

---

[10] The version of section 924(c)(1) at the time of conviction read, in relevant part: Whoever, during and in relation to any crime of violence . . ., uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . ., be sentenced to imprisonment for five years, and if the firearm is a short barreled rifle [or a] short-barreled shotgun, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.

18 U.S.C. § 924(c)(1) (1988 ed., Supp. V). The current version of section 924 closely mirrors that evaluated by <u>Castillo</u>, although the current version has the above provisions subdivided into subsections (b) and (c).

12

Id. The Court disregarded the fact that section 924 as a whole was entitled "Penalties," deeming this title insignificant in determining legislative intent. See id. at ___. 120 S. Ct. at 2093. Further, the Court noted that, unlike recidivism, the type of firearm used in the commission of a crime was not a traditional sentencing factor. Rather, traditional sentencing factors "often involve either characteristics of the offender, such as recidivism [as in Almendarez-Torres], or special features of the manner in which a basic crime was carried out (e.g., that the defendant abused a position of trust or brandished a gun)." Id. at ___, 120 S. Ct. at 2094.

The most recent Supreme Court pronouncement in this line of cases came in Apprendi v. New Jersey, ___ U.S. ___, 120 S. Ct. 2348, ___ L. Ed. 2d ___ (June 26, 2000). Apprendi was an appeal from a New Jersey state conviction in which the defendant pled guilty to a charge of second-degree possession of a firearm for an unlawful purpose. Id. at ___, 120 S. Ct. at 2351 (citing N.J. Stat. Ann. § 2C:39-4(a) (West 1995)). This charge usually carried a penalty range of five to ten years' imprisonment, N.J. Stat. Ann. § 2C:43-6(a)(2), but the defendant was eligible for sentence enhancement on the basis of New Jersey's "hate crime" law, N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 2000).[11] The trial judge, at sentencing, found by a preponderance of the evidence that the defendant had violated the hate crime law and sentenced him to twelve years. See Apprendi. ___ U.S. at ___, 120 S. Ct. at 2352. On appeal, the Supreme Court addressed the question "whether the Due Process Clause of the Fourteenth Amendment requires that a factual

_____

[11] The "hate crime" law provided for an "extended term" of imprisonment if the trial judge found, by a preponderance of the evidence, that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 2000). The hate crime statute authorized an "enhanced" sentence of imprisonment for second degree offenses of "between 10 and 20 years." N.J. Stat. Ann. § 2C:43-7(a)(3).

13

determination authorizing an increase in the maximum prison sentence for an offense from 10 to

20 years be made by a jury on the basis of proof beyond a reasonable doubt." Id. at ___, 120 S.

Ct. at 2351. The Court answered this question affirmatively, and reversed the defendant's

conviction. Id. at ___, 120 S. Ct. at 2366-67.

Unlike Jones and Castillo, in which the Supreme Court relied on principles of statutory

interpretation, in Apprendi the Court addressed the constitutional issue directly. In so doing, the

Court held:

> In sum, our reexamination of our cases in this area, and of the history upon which they
> rely, confirms the opinion that we expressed in Jones. Other than the fact of a prior
> conviction [as in Almendarez-Torres], any fact that increases the penalty for a crime
> beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond
> a reasonable doubt. With that exception, we endorse the statement of the rule set forth in
> the concurring opinions in that case: "It is unconstitutional for a legislature to remove
> from the jury the assessment of facts that increase the prescribed range of penalties to
> which a criminal defendant is exposed. It is equally clear that such facts must be
> established by proof beyond a reasonable doubt." 526 U.S. at 252-53, 119 S. Ct. 1215
> (opinion of STEVENS, J.); see also id., at 253, 119 S. Ct. 1215 (opinion of SCALIA, J.).

Id. at ___, 120 S. Ct. at 2362-63 (footnote omitted).[12]

The Court labeled Almendarez-Torres as "at best an exceptional departure from the

historic practice" and stated that "it is arguable that [it] was incorrectly decided, and that a logical

application of our reasoning today should apply if the recidivist issue were contested." Id. at ___,

---

[12] After concluding that legislative intent was not dispositive and that the case presented
the constitutional question directly, the Court quoted Jones approvingly:

"[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial
guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases
the maximum penalty for a crime must be charged in an indictment, submitted to a jury,
and proved beyond a reasonable doubt." [Jones, 526 U.S. at 243 n.6, 119 S. Ct. at 1224
n.6.] The Fourteenth Amendment commands the same answer in this case involving a
state statute.

Id. at ___, 120 S. Ct. at 2355.

14

120 S. Ct. at 2361-62 (footnote omitted). Nonetheless, the Court found it unnecessary to revisit Almendarez-Torres and chose to treat prior convictions as a "narrow exception" to the rule announced in Apprendi. Id. at ___, 120 S. Ct. at 2362.[13]

The progression of this line of cases makes clear that the rule foreshadowed in Jones and announced in Apprendi is constitutionally significant and must be applied when evaluating what may be determined by a sentencing judge by a preponderance of the evidence and what must be charged in an indictment and decided by a jury beyond a reasonable doubt.

2.

In United States v. Hester, 199 F.3d 1287 (11th Cir. 2000), petition for cert. filed, ___ U.S.L.W. ___ (U.S. June 12, 2000) (No. 99-10024), we held that the amount of marijuana involved in an offense, while bearing on a defendant's sentence, was not an element of the offense and thus did not have to be proved beyond a reasonable doubt. Like Rogers, the defendant in Hester was convicted under 21 U.S.C. § 841(a). See Hester, 199 F.3d at 1289. Although the Government introduced evidence at trial regarding the number of marijuana plants involved, "the district court determined the actual number of plants at sentencing." Id. at 1291. We held that

___

[13] The Court did specify in a footnote that it did not intend to abolish the notion of a sentencing factor, but only to limit it to its appropriate historical context:

> This [holding] is not to suggest that the term "sentencing factor" is devoid of meaning. The term appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense. On the other hand, when the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense.

Id. at ___ n.19. 120 S. Ct. at 2365 n.19.

15

10/03/00 14:59 FAX 305 530 7120 Federal Public Defender → FPD-Ft Laud

r-06015-WJZ Document 86 Entered on FLSD Docket 10/11/2000 Pa
SENT BY: LYNN G. WAXMAN, P.A.; 561 659 1215; OCT-2-00 3:05PM; PAGE 17 22

the number of marijuana plants was not an element of the offense but rather a sentencing element, meaning that there was no error in the sentencing of the defendant in that case. See id. at 1292-93. We were in accordance with other circuits in so holding. See United States v. Thomas, 204 F.3d 381, 384 (2d Cir. 2000) (holding that drug quantity is a sentencing factor rather than an element of the crime, even after Jones v. United States, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999)), petition for cert. filed, ___ U.S.L.W. ___ (U.S. Mar. 24, 2000) (No. 99-8779) and (U.S. May 12, 2000) (No. 99-9541); United States v. Jones, 194 F.3d 1178, 1186 (10th Cir. 1999) (same), cert. granted, judgment vacated by Jones v. United States, ___ U.S. ___, 120 S. Ct. 2739, 147 L. Ed. 2d 1002 (June 29, 2000) (No. 99-8176); United States v. Williams, 194 F.3d 100, 107 (D.C. Cir. 1999) (same), reh'g held in abeyance, (Feb. 24, 2000). Our holding in Hester was a reaffirmation of precedent in this circuit that pre-dated the Supreme Court's holding in Jones v. United States, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999). See, e.g., United States v. Perez, 960 F.2d 1569, 1574-76 (11th Cir. 1992); United States v. Cross, 916 F.2d 622, 623 (11th Cir. 1990); United States v. Williams, 876 F.2d 1521, 1524-25 (11th Cir. 1989).

Hester interpreted Jones v. United States, 526 U.S. at 243 n.6, 119 S. Ct. at 1224 n.6,[14] to mean that "when a court finds a statute and its legislative history unclear, the court should err in favor of the defendant and consider an element of the offense any factor which increases the

---

[14] The relevant footnote in Jones read, in relevant part, that

[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

526 U.S. at 243 n.6, 119 S. Ct. at 1224 n.6.

16

maximum penalty for the offense." Hester, 199 F.3d at 1291-92 (footnote omitted). In so holding, Hester explicitly rejected a reading of Jones that held it to mean "exactly what it says: any factor which can increase the maximum penalty for an offense constitutes an element of that offense." Id. at 1291 (footnote omitted). Hester relied upon other circuit court decisions to support its reading of Jones, including the Fifth Circuit's decision in United States v. Castillo, 179 F.3d 321 (5th Cir. 1999), rev'd, ___ U.S. ___, 120 S. Ct. 2090, ___ L. Ed. 2d ___ (June 5, 2000). See Hester, 199 F.3d at 1292. Hester further looked to the language of the statute, in which section 841 offenses are divided into "Unlawful acts" (§ 841(a)) and "Penalties" (§ 841(b)). See id. This statutory linguistic distinction was later rejected by the Supreme Court in Castillo, ___ U.S. at ___, 120 S. Ct. at 2093-94 (noting that the title of a section is not conclusive). Because Hester did not find section 841 and its legislative history unclear, Hester retained the rule in this circuit that drug quantity was not an element of the offense.

Hester was decided, however, prior to the Court's decisions in Castillo and Apprendi. Castillo, like Jones, turned largely on statutory construction grounds. In Apprendi, though, the constitutional issue was "starkly presented." Apprendi, ___ U.S. at ___, 120 S. Ct. at 2355. When squarely faced with the constitutional question, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at ___, 120 S. Ct. at 2362-63.

In light of Hester's determination that section 841 is not ambiguous and given to alternate interpretation, we must conclude that principles of statutory construction alone cannot resolve this case, and that the constitutional issue decided by Apprendi is starkly presented. See also

17

United States v. Nordby, ___ F.3d ___, No. 99-10191 (9th Cir. Sept. 11, 2000) ("We conclude that we are unable to give a construction to [section 841] that would avoid the constitutional issue raised by Apprendi."). Applying Apprendi's constitutional principle to section 841 cases, it is clear that the principle is violated if a defendant is sentenced to a greater sentence than the statutory maximum based upon the quantity of drugs, if such quantity is determined by the sentencing judge rather than the trial jury. The statutory maximum must be determined by assessing the statute without regard to quantity. This means that sections 841(b)(1)(A) and 841(b)(1)(B) may not be utilized for sentencing without a finding of drug quantity by the jury. If a provision of section 841(b) that does not contain a quantity amount applies, for example, section 841(b)(1)(C),[15] then a convicted defendant may still be sentenced under that provision.

In short, we hold today that drug quantity in section 841(b)(1)(A) and section 841(b)(1)(B) cases must be charged in the indictment and proven to a jury beyond a reasonable doubt in light of Apprendi.[16] We overrule Hester to the extent it is inconsistent with this holding.

---

[15] 21 U.S.C. § 841(b)(1)(C) is a catch-all provision for any quantity of schedule I or II drugs, or 1 gram of flunitrazepam. Other subsections of section 841 might satisfy the Apprendi analysis as well. See, e.g., 21 U.S.C. § 841(b)(1)(D) (a catch-all provision for, among other things, "less than 50 kilograms" of marijuana); 21 U.S.C. § 841(b)(2) (establishing a penalty of not more than 3 years' imprisonment for possession of an unspecified amount of "a controlled substance in schedule IV").

[16] We are not alone in this interpretation of section 841. See Nordby, ___ F.3d ___, No. 99-10191 (holding that Apprendi requires that drug quantity in section 841 cases must be charged in the indictment and proven beyond a reasonable doubt before a jury, and overruling circuit precedent to the contrary); United States v. Rebmann, ___ F.3d ___, No. 98-6386 (6th Cir. Aug. 28, 2000) (holding a determination whether the distribution of drugs caused death or serious bodily injury, which would increase a defendant's sentence under section 841, is an element of the offense after Apprendi); United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. July 18, 2000) (holding that Apprendi applies in the context of drug convictions under section 841 and overruling circuit precedent to the contrary); cf. United States v. Meshack, ___ F.3d ___, No. 99-50669 (5th Cir. Aug. 28, 2000) (intimating that it would decide drug quantity is an element of a

18

3.

In the instant case, Rogers preserved his objection to the determination of his sentence by reference to drug quantity, which was neither charged in the indictment nor proven to the jury. The issue is therefore properly before this court on review. Cf. Nordby, ___ F.3d ___, No. 99-10191 (holding that Apprendi applies to section 841 cases even if no objection was made when plain error review is satisfied); United States v. Garcia-Guizar, ___ F.3d ___, No. 99-10435 (9th Cir. Sept. 20, 2000) (holding that although Apprendi applies to section 841 cases if no objection was made, plain error review is not satisfied unless there is a showing of substantial prejudice).

As this case is on direct review, there is no doubt that Rogers is entitled to the benefit of the rule announced in Apprendi and applied here. See Griffith v. Kentucky, 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649 (1987). But cf. In Re: Benhurshan Joshua, ___ F.3d ___, No. 00-14328 (11th Cir. 2000) (holding that the Apprendi rule does not apply retroactively to cases on collateral review).

Applying the rule to the facts at hand, it is clear that Rogers must be sentenced under section 841 without reference to drug quantity. In effect, the jury verdict convicted him only of manufacturing, possessing, or distributing an undetermined quantity of crack cocaine. Because section 841(b)(1)(A) and section 841(b)(1)(B) both turn upon the amount of crack cocaine at issue, those two sub-parts are inapplicable to this case. Therefore, Rogers may only be sentenced under section 841(b)(1)(C), which provides punishment for conviction of an undetermined

---

section 841 offense, but declining to rule on the issue because the Government conceded that Apprendi applied to section 841 cases).

19

amount of crack cocaine.[17]

C.

The next question we must address is whether Rogers is subject to an enhanced sentence under the statute because of his previous convictions. Section 841(b)(1)(C) provides for punishment "of not more than 20 years" in most cases, but permits a sentence of "not more than 30 years" if a person is convicted under section 841 "after a prior conviction for a felony drug offense [that] has become final." 21 U.S.C. § 841(b)(1)(C). For a defendant's sentence to be enhanced under the provisions of section 841, the government must meet the requirements of 21 U.S.C. § 851. See United States v. Rutherford, 175 F.3d 899, 903 (11th Cir. 1999). Section 851 provides that a recidivist enhancement may not be imposed for a jury conviction "unless before trial, . . . the United States attorney files an information with the court (and serves a copy of such information on the [defendant] or counsel for the [defendant]) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a). We have consistently required strict compliance with the requirements of section 851.[18] See Rutherford, 175 F.3d at 904; United

---

[17] Crack cocaine is a schedule II drug, see 21 U.S.C. § 812(c), and is therefore punishable under section 841(b)(1)(C), as described supra note 15.

[18] Although not dispositive in this case, Rogers may not have been properly notified under section 851. The Government's Information stated, "Upon conviction in the present case, the defendant is subject to a mandatory minimum sentence of ten years imprisonment without release and a fine of up to $4,000,000, pursuant to Title 21, United States Code, Section 841(a)(1)." While the Government properly referenced the previous convictions upon which it would rely, the Information did not notify Rogers of the amount of additional punishment to which he may be exposed as a result of the previous convictions. While section 851 does not require the government to list a statutory section under which the enhancement will become effective, it is likely improper for the government to list a statutory section (section 841(a), in this case) which does not provide for any penalties or enhancements at all. The Information should have

20

States v. Weaver, 905 F.2d 1466, 1481 (11th Cir. 1990); United States v. Cevallos, 538 F.2d 1122, 1126-27 (5th Cir. 1976); United States v. Noland, 495 F.2d 529, 533 (5th Cir.).[19]

In the instant case, the Government sought to enhance Rogers's sentence by filing a Previous Conviction Information pursuant to section 851. The Information, filed August 11, 1999, referenced three prior felony drug convictions (all of which occurred on August 5, 1996). After Rogers was convicted on August 26, 1999, the district court scheduled a sentencing hearing for November 22, 1999, and ordered a PSI to be prepared in the interim. The PSI was prepared and made available on October 18. The PSI noted that the Government sought an enhanced penalty through section 851, but the PSI did not utilize the enhancement when determining the recommended penalty. Instead, the PSI recommended a sentence for Rogers consistent with 21 U.S.C. § 841(b)(1)(A), based on the quantity of drugs. Even if sentencing based on drug quantity were permissible, this was an impermissible application of the statute, as noted in part III.A supra (holding that section 841(b)(1)(B) rather than section 841(b)(1)(A) was the proper penalty provision under the pre-Apprendi law). Nonetheless, the PSI made no further reference to the section 851 enhancement and did not rely upon it.

At the sentencing hearing, there was some confusion as to which statutory provision was applicable for Rogers's sentence. The district court, the Government, the defendant, and the PSI all, at some point, referred to section 841(b)(1)(A) as the relevant section. In the end, it seems all

---

referenced section 841(b)(1)(B), under pre-Apprendi law, and section 841(b)(1)(C) under the rule announced in Apprendi and applied by us today.

[19] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

21

believed that Rogers was being sentenced under section 841(b)(1)(A), despite the fact that a few arguments had been made concerning the applicability section 841(b)(1)(B). (Rogers's motion for a downward departure under the Guidelines can best be construed as a motion for sentencing under section 841(b)(1)(B) rather than section 841(b)(1)(A).) Although at one point the Government contended that section 851 enhancement was proper and Rogers contested the convictions, the district court merely adopted the statutory and Guideline applications prescribed by the PSI for purposes of sentencing. The district court made no ruling on the section 851 enhancement at sentencing, and the PSI did not rely upon the section 851 enhancement. Rogers was thus sentenced under section 841(b)(1)(A) without any section 851 enhancement, as set forth in the PSI.

Following pronouncement of the sentence, the district court elicited objections, as required by United States v. Jones, 899 F.2d 1097, 1102 (11th Cir.), cert. denied, 498 U.S. 906, 111 S. Ct. 275, 112 L. Ed. 2d 230 (1990), overruled in part on other grounds by United States v. Morrill, 984 F.2d 1136 (11th Cir. 1993) (en banc). Rogers renewed his previous objections, including his Jones/Apprendi objection and his motion for a downward departure. The Government offered no objections. Further, the Government has not cross-appealed.

Because Rogers was not sentenced under the section 851 enhancement by the district court and because there was no objection or appeal on that issue, we treat the Government as having abandoned its request for a section 851 enhancement.

IV.

We now turn to application of the statute and the Guidelines that the district court should

22

apply in resentencing. Rogers was originally sentenced under the Guidelines as a career offender under section 4B1.1, because the career offender offense level (37) was higher than the base offense level (30). Because there is no enhancement for prior convictions, the maximum allowable sentence under section 841(b)(1)(C) is twenty years. The Guidelines provide that for an offense statutory maximum of "20 years or more, but less than 25 years," the offense level under the career offender section shall be 32. See U.S.S.G. § 4B1.1(C). Because the base offense level for Rogers remains at 30, the career offender level of 32 must be applied. See U.S.S.G. § 4B1.1. Because Rogers had a criminal history category of VI, his offense level of 32 gives him a sentencing range of 210-262 months. However, because the maximum imprisonment allowable under section 841(b)(1)(C) is 20 years, the imprisonment range must be 210-240 months. See U.S.S.G. § 5G1.1(c). Section 841(b)(1)(C) also dictates supervised release of at least three years in addition to the term of imprisonment and authorizes a fine of not more than $1,000,000. See 21 U.S.C. § 841(b)(1)(C).

We therefore VACATE Rogers's sentence and REMAND to the district court for resentencing.

SO ORDERED.

23